UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUNE HILL,

    Plaintiff,

vs.

CITY OF CINCINNATI, *et al.*,

    Defendants.

Civil Action No.1:11-cv-830

Spiegel, J.
Bowman, M.J.

### REPORT AND RECOMMENDATION[1]

This civil action is before the Court on the parties' cross motions for summary judgment (Docs. 58, 65), as well as the parties' responsive memoranda and supporting documents. (Docs. 59, 63, 64, 66-68, 70-71). The motions have been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I now recommend that the Officer's motion for summary judgment should be **GRANTED**.

**I. BACKGROUND AND FACTS**

Plaintiff, June Hill, brings this *pro se* action under state and federal law for alleged civil rights violations committed by the City of Cincinnati and Officers of the City of Cincinnati Police Department.[2] Plaintiff is an African-American taxicab driver operating in Cincinnati, Ohio. (Doc. 4). While on duty as a taxi cab driver, Plaintiff alleges that City of

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Plaintiff initiated this action on November 28, 2011 by filing a motion for leave to proceed *in forma paupris*. (Doc. 1). Plaintiff's IFP motion was granted and the complaint filed on December 22, 2011. (Docs. 3, 4). Additionally, the City of Cincinnati was dismissed from this action on May 3, 2012. (Doc. 17).

Cincinnati Police Officers Stephen Hoerst and Dennis Zucker frequently harassed her and issued her fraudulent parking citations. Plaintiff further asserts that Officer Zucker retaliated against her for filing this action.[3]

The evidence of record includes the following undisputed facts:

A. *Officer Hoerst*

In September 2010, Officer Hoerst was working a detail at Paul Brown Stadium. (Doc. 63, Hoerst dep., 9). During that detail, Plaintiff June Hill was working as a taxi driver in the area of Paul Brown Stadium. Plaintiff approached Officer Hoerst and complained about a limousine parking at a taxi stand. *Id.* Thereafter, Officer Hoerst discovered the area Plaintiff was complaining about was not a taxi stand, but rather, a no parking zone. As such, Officer Hoerst informed Plaintiff that she could not use the area as a taxi stand. *Id.* at 10-11. Plaintiff asked Officer Hoerst to consult with his supervisor, which he did. Officer Hoerst's supervisor relayed that taxies were permitted to park in that area that day. *Id.* at 11.

Thereafter, on October 2, 2011, Officer Hoerst was informed that no one would be permitted to park in the no parking zone near Paul Brown Stadium. *Id.* at 12. Upon arrival at the no parking area that day, Officer Hoerst asked the taxis that were present to move out of the no parking zone. All taxis with the exception of Plaintiff, departed the area. Plaintiff, however, stayed in the no parking zone arguing with Officer Hoerst. *Id.* at 14.

---

[3] On June 22, 2012, Plaintiff filed an additional case against The City of Cincinnati and Officer Zucker. All but one claim was dismissed in that matter and Plaintiff was allowed to proceed on a claim of retaliation under Section 1983 against Defendant Zucker. That claim was thereafter consolidated into the instant action in August 2012. (See Doc. 31, Consolidation Order; Doc. 34, First Amended Complaint).

As a result of Plaintiff's refusal to leave the no parking zone, Officer Hoerst issued her the following two traffic tickets: (1) failure to obey a traffic control device (no stopping or parking sign); and (2) disregarding a police officer's signal. *Id.*, 6. The tickets were ultimately dismissed by Officer Hoerst's supervisor because his supervisor believed Officer Hoerst should have issued a parking citation and had Plaintiff's car towed, instead of issuing a traffic ticket.

### *B. Officer Zucker*

Officer Zucker works in the Traffic Unit for the City of Cincinnati Police Department. In that capacity, he has encountered Plaintiff on two occasions. (Doc. 64, Zucker dep., 4). Notably, on October 19, 2011 while Officer Zucker was on duty, he observed that Plaintiff "backed her cab over 100 feet" and failed to turn on her lights when her windshield wipers were in use." *Id.,* 15. She was ultimately convicted for improper backing and improper lighting on a vehicle in the Hamilton County Municipal Court by Judge Mock. (Doc. 65, Ex. B). Plaintiff's conviction was affirmed by the First District Court of Appeals. She then appealed to the Supreme Court of Ohio, but the Court declined to accept jurisdiction. *Id.*

The next encounter with Officer Zucker and Plaintiff occurred on April 25, 2012. At that time, Plaintiff claims that Officer Zucker removed the permit from her taxi that allows a driver to operate a taxi cab. (Doc. 34). Notably, in 2012, the Public Vehicle Unit used traffic enforcement officers to help monitor and inspect public vehicles. (Doc. 65, Ex. D. Westerman Aff., ¶ 2).[4] On April 25, 2012, Officer Zucker assisted the Public vehicle Unit. During that time, Officer Zucker observed that a tire on Plaintiff's taxi displayed a steel cord,

---

[4] Douglas Westerman is a public vehicle investigator with the City of Cincinnati Public Vehicle Unit. *Id.*

as such he determined that the vehicle was not safe and required immediate repair. *Id.* at 5,6. As such, Officer Zucker removed the sticker from Plaintiff's taxi because it was not roadworthy.

Plaintiff contends, however, that Officer Zucker threatened other taxi drivers present at the scene not to assist Plaintiff or they would also receive a citation. (Doc. 34). Plaintiff further contends that Officer Zucker taunted Plaintiff by saying "Add this to your lawsuit." *Id.* A week later, Plaintiff maintains that Officer Zucker threatened to give Plaintiff additional citations in response to a seat belt issue.

Accordingly, Plaintiff's amended complaint asserts four causes of action against Officer Hoerst and Officer Zucker: 1) violation of her First Amendment Rights; 2) violation of her Fourth Amendments rights; 3) violation of her Fourteenth Amendment Rights; and 4) malicious prosecution. Now before the Court are the parties cross motions for judgment. (Doc. 58, 65).

## II. STANDARD OF REVIEW

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most

favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481

-5-

F.3d 369, 379 (6th Cir. 2007)).

### III. ANALYSIS

*A. Summary of the parties' motions for judgment*

With respect to Officer Hoerst, Plaintiff appears to assert that she is entitled to judgment as a matter of law because he took enforcement action against her because she asked to see his badge number during the October 2011 incident. Plaintiff further asserts that such action violated her constitutional rights under the First Amendment. Plaintiff further argues that Officer Hoerst illegally seized her in violation of the Fourth Amendment because he took her license and walked away for thirty minutes. Plaintiff contends that she is entitled to judgment as a matter of law on her claims against Officer Zucker because he first identified texting and driving as the purpose of his stop of her taxi, but then cited her for other violations. Plaintiff argues that Officer Zucker retaliated against her after she filed this lawsuit by removing her sticker from her public vehicle in April 2012.

Defendants, however, contend that they are entitled to judgment as a matter of law because Plaintiff has failed to establish that either Officer violated her constitutional rights. Defendants further assert that they are entitled to qualified immunity.

*B. Qualified Immunity*

To succeed on a claim for a violation of § 1983, the plaintiff must show that (1) a person (2) acting under color of law (3) deprived her of her rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir.2001). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818

(1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). See also *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236-37.

Plaintiff bears the burden of showing that a right is clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Defendants, however, bear the burden of showing

that the challenged actions were objectively reasonable in light of the law existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier,* 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

    C. *Officer Hoerst and Officer Zucker are entitled to Qualified Immunity on Plaintiff's Claims*

    1. *Officer Hoerst*

Here, with respect to Officer Hoerst, Plaintiff alleges that she received a traffic citation in retaliation for exercising her First Amendment right to free speech; namely, asking for Officer Hoerst's badge number. Plaintiff further asserts that she was improperly

seized by Officer Hoerst in violation of her Fourth Amendment rights because he took her license and walked away for thirty minutes.

"By virtue of its incorporation into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollon*, 443 U.S. 137, 142-43 (1979). Thus, arrest, even without a warrant, does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37; *See also Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975) ("a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime"); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 305 (6th Cir. 2005) (An officer has probable cause when he discovers reasonably reliable information that a suspect has committed a crime) (internal citations omitted). Thus, in order to establish a violation of her Fourth Amendment rights, Plaintiff must show that the Officers lacked probable cause for her alleged seizure and subsequent traffic citations.

Officer Hoerst, argues that he had probable cause for the two traffic tickets he issued to Plaintiff. Plaintiff bears the burden for proving that Officer Hoerst lacked probable cause to issue the citations. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999). Plaintiff has not submitted

significant probative evidence that Officer Hoerst lacked probable cause for the citations.

As detailed above, the evidence shows that on October 2, 2011, Plaintiff's taxi was parked in a no parking zone. Officer Hoerst asked Plaintiff to move her taxi out of the no parking area and she refused. Thereafter, Officer Hoerst issued Plaintiff traffic citations for disregarding a traffic signal (no parking sign) under Cincinnati Municipal Code section 502-19 and failure to obey an Officer's signal under Cincinnati Municipal Code section 502-9. Notably, Plaintiff does not dispute that her taxi was parked in a no parking zone. Accordingly, the undersigned finds that Officer Horest had probably cause for the citations he issued under CMC 502-19 and CMC 502-9. As such, Plaintiff has failed to show a violation of her rights under the Fourth Amendment, as required to defeat Officer's Hoerst's claim of qualified immunity with respect to this claim.

Next, Plaintiff's assertion that Officer Hoerst's actions violated her rights under the First Amendment also fails as a matter of law. To state a First Amendment retaliation claim, Plaintiff must show: "(1) [she] engaged in protected conduct; (2)[she] suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) the adverse action was motivated at least in part by the protected conduct." *Smith v. Craven*, 61 F. App'x 159, 161 (6th Cir. 2003) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999)). "A motivating factor is essentially a but-for cause 'without which the action being challenged simply would not have been taken.'" *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Greene v. Barber*, 310 F.3d 889, 893 (6th Cir.2002)).

In 2006, the Sixth Circuit held that *Hartman v. Moore*, 547 U.S. 250 (2006), a Supreme Court opinion, added a fourth element to this First Amendment analysis, requiring

a plaintiff alleging a retaliatory arrest to show that the defendant officer also lacked probable cause. *See Barnes v. Wright*, 449 F.3d 709, 720 (2006).  In 2012, after realizing that *Hartman* had lead to a split in the circuits regarding whether proving a lack of probable cause was necessary to establish a claim for retaliatory arrest, the Supreme Court, in *Reichle v. Howards*, 132 S.Ct. 2088 (2012), held that it "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." 132 S.Ct. at 2093.  The Supreme Court also held that at the time of the respondent's arrest, "it was not clearly established that an arrest supported by probable cause could violate the First Amendment." *Id.* at 2092.

Here, the evidence establishes that Officer Hoerst had probable cause to issue the traffic citations at issue.  Because the Supreme Court has found that a claim for First Amendment retaliation where the arrest is supported by probable cause is not clearly established, under the qualified immunity framework, Officer Hoerst would not have been able to "reasonably ... anticipate when [his] conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

Accordingly, because it was not clearly established that an arrest supported by probable cause could violate the First Amendment, Officer Hoerst is entitled to qualified immunity.  *See Saucier*, 533 U.S. at 202.

2. Officer Zucker

With respect to his first encounter with Plaintiff on October 19, 2011, Officer Zucker contends that he had probable cause to cite Plaintiff's for improper backing under

Cincinnati Municipal Code Section 506-28 and for failing to have headlights illuminated under Ohio Revised Code Section 4513.03. In response to Defendant's motion for summary judgment, Plaintiff does not submit any evidence that she did not commit those offenses. Instead, Plaintiff argues that when Officer Zucker pulled her over, he indicated that he was doing so because he believed Plaintiff was violating Ohio's ban on texting while driving. (Doc. 58). As such, Plaintiff asserts that the citations she received were fraudulent and discriminatory. Such assertion, however, fails to establish that Officer Zucker did not have probable cause to issue the citations listed above.

First, the fact that a suspect was later charged with a different crime and acquitted is of no consequence to the probable cause analysis; so long probable as cause existed to seize a suspect for any crime, an arrest/citation is legal. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Here, Officer Zucker testified that he observed Plaintiff "backed her cab over 100 feet" and "failed to turn on her lights when her windshield wipers were in use." (Zucker dep., 7-8). Plaintiff does not supply any evidence to rebut this testimony. Moreover, the record indicates that Plaintiff was convicted of these offenses in the Hamilton County Municipal Court and her convictions were upheld on appeal. In light of the foregoing, the undersigned finds that Officer Zucker had probable cause to issue the relevant citations. As such, Plaintiff has failed to establish a violation of her First or Fourth Amendment rights and Officer Zucker is therefore entitled to qualified immunity with respect to this encounter.

The next encounter between Plaintiff and Officer Zucker occurred on April 25, 2012. At that time, Officer Zucker observed a steel cord showing on one of the tires of Plaintiff's taxicab, a safety violation pursuant to Cincinnati Municipal Code 407. Based on this safety

hazard and finding that Plaintiff's vehicle was not roadworthy, Officer Zucker removed Plaintiff's taxicab sticker.[5] Plaintiff asserts, however, that Officer Zucker's actions amount to harassment and retaliation for this lawsuit and her previous encounters with law enforcement. Plaintiff further contends that after Officer Zucker removed her sticker, he stated "Add this to your lawsuit." Again, despite such assertions, Plaintiff fails to provide any evidence or argument disputing the fact that her taxi was not roadworthy because a steel cord was showing on one of her tires and/or that Officer Zucker lacked probable cause for this citations. To the contrary, Officer Zucker's un-rebutted testimony establishes that he acted reasonably by removing Plaintiff's sticker because her vehicle was not road worthy pursuant to the Cincinnati Municipal Code.

As noted above, qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). Viewing the facts in favor of Plaintiff, there is no evidence that Officer Hoerst or Officer Zucker knowingly violated the law.

---

[5] The sticker permits Plaintiff to operate as a public vehicle.

### IV.  CONCLUSION

Based on the foregoing, the undersigned concludes that Officer Zucker and Officer Hoerst are entitled to judgment as a matter of law.  It is therefore **RECOMMENDED** that: (1) the Officers' motion for summary judgment (Doc. 65) be **GRANTED; (2),** Plaintiff's motion for summary judgment (Doc. 58) be **DENIED;** (3) and this matter **TERMINATED** on the active docket of the Court.

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUNE HILL,
    Plaintiff,

vs.

CITY OF CINCINNATI, et al,
    Defendants.

Civil Action No.1:11-cv-830

Spiegel, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).