```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION

JUNE HILL,                      :
                                :      NO. 1:11-cv-00830
        Plaintiff,              :
                                :
        v.                      :      OPINION AND ORDER
                                :
CITY OF CINCINNATI, et al.,     :
                                :
        Defendants.             :
```

This matter is before the Court on the January 15, 2014 Report and Recommendation of Magistrate Judge Stephanie K. Bowman (doc. 72), to which Plaintiff, who proceeds pro se, has objected (doc. 77) and Defendants have replied (doc. 78). For the reasons that follow, we hereby ACCEPT the recommendation of the Magistrate Judge.

**I.  Background**

Plaintiff June Hill is an African-American taxi driver. Defendants Stephen G. Hoerst and Dennis M. Zucker are City of Cincinnati Police Officers. She alleges four causes of action against Defendants: violation of her First Amendment rights; violation of her Fourth Amendment rights; violation of her Fourteenth Amendment rights; and malicious prosecution. We briefly summarize the undisputed facts that underpin these causes of action.

1

On October 2, 2011, the date of a home Bengals football game, Officer Hoerst was assigned to a detail at Paul Brown Stadium ("PBS"). He had been told in roll call that taxis would not be permitted to park in a designated "No Stopping or Parking" zone near PBS, even though, the previous week, an exception apparently had been made. When he arrived to the scene, Officer Hoerst asked all the taxis present to move out of the particular "No Stopping or Parking" zone. Every taxi driver complied save for Plaintiff, who argued with Officer Hoerst. (Hoerst Deposition, doc. 63 at 9-14.) Because she refused to move her taxi, he issued two traffic citations, one for failing to obey a traffic-control device (*i.e.* the "No Stopping or Parking" sign) (a violation of Cincinnati Municipal Code Section 502-19) and the other for disregarding a police officer's signal (a violation of Cincinnati Municipal Code Section 502-9). His supervisor, however, later dismissed these "traffic" citations because he thought that Officer Hoerst instead should have issued a "parking" citation and then had Plaintiff's vehicle towed. (*Id.* at 6-7.)

Some two weeks later, on October 19, 2011, Officer Zucker, assigned to the Traffic Unit, issued two citations to Plaintiff (Zucker Deposition, doc. 64 at 7-8). She was convicted for "improper backing" (a violation of Cincinnati Municipal Code Section 506-28) and "improper lighting on a vehicle" (a

2

violation of Ohio Rev. Code § 4513.03(A)(3)) in a bench trial before Judge Russell Mock in Hamilton County Municipal Court.[1] (Doc. 65, Exh. B.) Her conviction was upheld by the Court of Appeals, First Appellate District of Ohio, Hamilton County, Ohio (id. Exh. A); the Supreme Court of Ohio declined to accept jurisdiction of her second-tier appeal (id. Exh. C).

In 2012, the Traffic Unit assisted the Public Vehicle Unit in monitoring and inspecting public vehicles such as taxis (id. Exh. D, Affidavit of Douglas Westerman ¶¶ 3, 4). On April 25, 2012, approximately six months after Officer Zucker cited Plaintiff, he observed that one of the tires on her taxi displayed a steel cord. On this basis he determined that her vehicle was unsafe and the plastic sticker from her taxi—that verifies that it is licensed to do business within the City of Cincinnati—was removed (see Zucker Deposition, doc. 64 at 24-25, 28-34; doc. 65 Exh. D, Affidavit of Douglas Westerman ¶¶ 5, 6.) Plaintiff maintains that Officer Zucker threatened other taxi drivers present to not interfere or they, too, would be cited (First Amended Complaint, doc. 34 ¶ 34) and that he taunted her by saying, "Add this to your lawsuit" (id. ¶ 35). She also

---

[1] At trial, Officer Hoerst testified that he had seen Plaintiff "back her taxi the wrong way for a distance of approximately 100 feet[]" (doc. 65, Exh. A at 1). And "because it had been raining and [Plaintiff] had activated her windshield wipers," he cited her for "failing to have her lights on[]" (id. Exh. A at 1-2).

3

alleges that, a week later, Officer Zucker threated her with additional citations over a seat-belt issue (id. ¶ 36).

Plaintiff claims that the traffic citations that Officer Hoerst issued to her on October 2 were in retaliation for her asking for his badge number in violation of her right to exercise free speech under the First Amendment. Further, she alleges an unlawful seizure by him in violation of the Fourth Amendment because, in the course of issuing the citations, Officer Hoerst took her license and walked away for forty minutes. Plaintiff also alleges a violation of the Fourth Amendment when Officer Zucker first identified texting and driving as the purpose of his traffic stop on October 19 but cited her instead for two different infractions. Further, she alleges violations of her First and Fourth Amendment rights by claiming that, subsequent to her filing this lawsuit, Officer Zucker retaliated against her on April 25 by removing the permit that allows her to operate her taxi as a public vehicle. Finally, she alleges a state common law tort claim of malicious prosecution against both officers. (See id. ¶¶ 40-47.)

## II. The Report and Recommendation

The Magistrate Judge set forth the sequential analysis required in cases brought under 42 U.S.C. § 1983 where defendants have raised a qualified immunity defense: whether the conduct complained of actually violated a constitutional right,

4

and, if so, whether that right was clearly established at the time of the injury. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). She also noted that in Pearson v. Callahan, 555 U.S. 223, 231 (2009), the Supreme Court ruled that following Saucier's "two-step protocol" is not mandatory, but remains permissible. 555 U.S. 223, 241, 242 (2009). A lower court, in its discretion, now may consider the second question first if it believes such a path "will best facilitate the fair and efficient disposition" of the case before it. Id. at 242. The Magistrate Judge did just that, observing that Plaintiff bears the burden of showing that a right is "clearly established." Everson v. Leis, 556 F.3d 484, 494 (6th Cir. 2009). (See doc. 72 at 7-8.)

With regard to the Fourth Amendment claims, the Magistrate Judge explained that Plaintiff has the burden to prove that Defendants lacked probable cause to issue the citations they did (and, in the case of Officer Hoerst, to "seize" her for forty minutes before returning her driver's license—along with the citations—to her). Fridley v. Horrighs, 291 F.3d 867, 872, (6th Cir. 2002). To that end, the Magistrate Judge observed that Plaintiff does not dispute that, on October 2, her taxi was parked in a "No Stopping or Parking" zone, or that Officer Hoerst asked her (and all the other taxi drivers parked there) to move her vehicle, or that she (and she alone) refused to do

5

so. Thus, the Magistrate Judge concluded that Officer Hoerst had probable cause to issue the citations for violation of Cincinnati Municipal Code Section 502-19 and Section 502-9; qualified immunity, therefore, attaches. (See doc. 72 at 8-10.)

The Magistrate Judge then considered Plaintiff's First Amendment retaliation claim. She relied on Reichle v. Howards, 132 S. Ct. 2088 (2012), upon which we now elaborate. In that case, the issue before the Supreme Court was whether Secret Service agents were immune from suit for allegedly "arresting a suspect in retaliation for his political speech" against then-Vice President Dick Chaney, "when the agents had probable cause to arrest the suspect for committing a federal crime." Id. at 2091. Justice Thomas, writing for the majority, stated, "[Before today, t]his Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause[.]" Id. at 2093 (emphasis added). Thus, because at the time of Plaintiff Howards' arrest, "it was not clearly established that an arrest supported by probable cause could violate the First Amendment[,]" the Secret Service agents were entitled to qualified immunity. Id. at 2092 (emphasis added). The decision in Reichle was released on June 4, 2012, which obviously post-dates the events now at issue. On this authority, then, the Magistrate Judge determined that

6

Officer Hoerst was entitled to qualified immunity on Plaintiff's First Amendment claim as well. (See doc. 72 at 10-11.)

The Magistrate Judge also reasoned that Plaintiff cannot dispute that Officer Zucker had probable cause to issue the two citations charging her with violations of Cincinnati Municipal Code Section 506-28 and Ohio Rev. Code § 4513.03(A)(3). She reports that Plaintiff does not deny that she committed the conduct underlying those offenses, but contends that the citations were "fraudulent and discriminatory" because Officer Zucker apparently first attributed the traffic stop to his belief that she was violating the ban on texting while driving. Citing to Devenpeck v. Alford, the Magistrate Judge noted that so long as probable cause existed to seize a suspect for any crime, the fact that a suspect is later charged with a different crime (and even acquitted thereof) does not invalidate the initial seizure. 543 U.S. 146, 153 (2004). Here, moreover, Plaintiff was convicted of the subsequent charges and those convictions were upheld on appeal. Accordingly, the Magistrate Judge determined that Officer Zucker was entitled to qualified immunity as to this encounter. (See doc. 72 at 11-12.) And the same result, the Magistrate Judge continued, attends their April 25 encounter. She remarked that Plaintiff had not adduced any evidence disputing the fact that her taxi was not roadworthy because a steel cord was showing on one of the tires of her

7

vehicle. Cincinnati Municipal Code Section 407 authorizes immediate revocation of a public vehicle license if "the public safety is threatened." Under these circumstances, therefore, probable cause supported removal of her permit. (See doc. 72 at 12-13.)

### III. Discussion

The Court interprets Plaintiff's pleading filed February 21, 2014 (doc. 77) to lodge three objections to the Magistrate Judge's report. First, referring to the April 25 "Bad Tire" event, she is "baffled" how Officer Zucker could be entitled to immunity "when there is no physical written evidence of the event[]" (id. at 1). Plaintiff also takes issue with what she perceives to be a conflict between Officer Zucker's testimony at the hearing on her Motion for a Temporary Restraining Order held on January 8, 2013 (minute entry doc. 44; transcript filed doc. 55) and at his deposition (doc. 64) with regard to whether he physically removed her taxi permit that day (doc. 77 at 2). Second, she does not think an award of immunity is appropriate when Officer Zucker "chang[es] the parameters of his [October 19] traffic stop from a violation of the city texting ordinance to a non existence [sic] backing offense and headlight violation[]" (id. at 3). Third, she believes Defendant Hoerst, "an officer with fifteen years['] experience in downtown events[,]" ought not be granted immunity because he should have

8

been aware of the "established 'game day exception' to parking in the area of Paul Brown Stadium during stadium events[]" and because he wrote "traffic" rather than "parking" citations on October 2 (id. at 4). Additionally, she claims that "[i]t should be a jury question at best whether asking for a badge number constitutes a refusal to move[]" (id.).

Defendants reply that Plaintiff has done nothing more than restate her prior arguments and has cited no legal authority. Thus, her objections are invalid and a de novo review by this Court is not warranted. Dorr v. AT&T Communications of Michigan, Inc., No. 12-cv-10393, 2012 WL 694645, at *1 (E.D. Mich. Mar. 5, 2012) (citing Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)). While we agree with Defendants' assessment, in the interests of justice and out of an abundance of caution, we nonetheless have considered de novo all the relevant filings in this matter in rendering our decision.

We turn first to the allegedly improper conduct of Officer Zucker. The fact that he did not photograph the tire that prompted removal of Plaintiff's public vehicle sticker or somehow make a written record of the event does not undermine the finding of probable cause that supports a grant of immunity. This Court has thoroughly reviewed the hearing and deposition testimony of Officer Zucker and we do not perceive it to be

9

inconsistent on the point of whether he, or Officer Chip Todd, removed the permit. Nor would it matter; what matters is whether a reasonable judgment was made as to the roadworthiness of Plaintiff's vehicle. And even if Officer Zucker had a retaliatory motive, until the Supreme Court handed down its June 4, 2012 ruling in Reichle v. Howards, supra, any such right was not clearly established; thus, our inquiry ends. See 132 S. Ct. at 2093.[2] As to the October 19 citations, Plaintiff is wrong in her bare assertion that, "[t]raffic stops are limited to the propose [sic] of the original stop" (doc. 77 at 4). Recalling the words of Justice Scalia writing for the majority in Devenpeck v. Alford, supra, "[w]hile it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we [the United States Supreme Court] have never held that to be constitutionally required." 543 U.S. at 155. Plaintiff includes the phrase "non existence [sic] backing offense and headlight violation" (see doc. 77 at 3) and presumably means it as a denial that she committed the conduct for which she was cited. Again, however, Plaintiff was convicted of these offenses, which were affirmed on appeal, and

---

[2] Plaintiff's focus on Officer Zucker's overall credibility is misplaced (see doc. 77 at 3-4 and doc. 66 at 3-4). His former practice of issuing citations to taxi drivers for violations of Ohio Rev. Code § 4503.05 prior to the City of Cincinnati's Law Department announcing a change in policy regarding enforcement (see Zucker Deposition, doc. 64 at 12-21) is simply not germane to the matter before us.

they have not been declared invalid.  Thus, Heck v. Humphrey precludes Plaintiff from attacking these state court judgments, and the underlying findings of probable cause, in a Section 1983 cause of action in federal court.  512 U.S 477, 486-87 (1994).

We consider next the purported unlawful conduct of Officer Hoerst.  Plaintiff's own testimony makes clear that Defendant Hoerst asked all taxi drivers to move out of the "No Stopping or Parking" area and that she declined to follow his instruction (see Plaintiff's Motion for Summary Judgment (Rule 56) Attachment 1 (Affidavit of June Hill (2) ¶¶ 2-4), doc. 58). She did not rebut Officer Hoerst's deposition testimony that he was told during roll call that the usual "game day exception" would not be honored.  The fact that the original "traffic" citations he issued were dismissed by his supervisor (because a "parking" ticket and vehicle tow was the more appropriate sanction) does not preclude a finding that he had probable cause to issue them in the first instance.  Without question, his action to seek removal of Plaintiff's taxi from the "No Stopping or Parking" zone was proper.

The Court notes that Defendants moved for summary judgment not only on Plaintiff's federal constitutional claims, but also on her state tort claim for malicious prosecution (see doc. 65 at 7).  The Magistrate Judge's Report, however, ends with her analysis of why she recommends that Officers Hoerst and Zucker

11

be granted immunity from further defending the pending federal claims and does not specifically address Plaintiff's state claim. Neither Plaintiff (see doc. 77) nor Defendants (see doc. 78) have objected to this omission. Because we conclude that Defendants are entitled to judgment as a matter of law with respect to Plaintiff's federal constitutional claims, we think it appropriate to decline to exercise supplemental jurisdiction over any residual state tort claim. See 28 U.S.C. § 1367(c)(4).

**IV. Conclusion**

In sum, having reviewed this matter pursuant to 28 U.S.C. § 636(b)(1), we conclude that the January 15, 2014 Report and Recommendation of Magistrate Judge Bowman (doc. 72) is well-reasoned and correct. Accordingly, the Court ACCEPTS, ADOPTS AND AFFIRMS it and OVERRULES Plaintiff's "objections" thereto. The Motion for Summary Judgment filed by Plaintiff June Hill (doc. 58) is hereby DENIED and the Motion for Summary Judgment filed by remaining[3] Defendants Stephen G. Hoerst and Dennis M. Zucker (doc. 65) is hereby GRANTED. Plaintiff's state tort claim for malicious prosecution is hereby DISMISSED WITHOUT PREJUDICE and the Court ORDERS that this case be closed on the docket.

---

[3] The City of Cincinnati previously was terminated as a Defendant in this matter by our Order dated May 3, 2012 (doc. 17).

We note that Plaintiff was granted leave to proceed in this matter *in forma pauperis* by the Magistrate Judge (doc. 3). Pursuant to 28 U.S.C. § 1915(a)(3), we CERTIFY that any appeal of this Order would not be taken in good faith for the reasons previously stated; any application made to this Court to appeal *in forma pauperis* thus will be DENIED. *See* Fed. R. App. P. 24(a)(3)(A). As a non-prisoner, however, pursuant to Fed. R. App. P. 24(a)(5), Plaintiff is free to apply to proceed *in forma pauperis* in the United States Court of Appeals for the Sixth Circuit. *See Callahan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999), *overruling in part* Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997).

SO ORDERED.

Dated:  March 25, 2014     s/S. Arthur Spiegel
                                          S. Arthur Spiegel
                                          United States Senior District Judge